UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-1 HICHAM ELHORR, M.D., and
D-3 LAMA ELHORR,

        Defendants.

Case No. 13-20158

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER DENYING DEFENDANT HICHAM ELHORR'S MOTION FOR
A *FRANKS* HEARING AND SUPPRESSION OF SEIZED EVIDENCE [96]**

At a hearing held on October 29, 2014, this criminal matter alleging charges involving

health care fraud came before the Court on Defendant Hicham Elhorr's motion for a *Franks*

hearing and suppression of seized evidence [ECF No. 96], joined by Defendant Lama

Elhorr [ECF No. 98].  For the reasons discussed below, Defendant's motion is DENIED.

**I.   Background**

On September 19, 2012, Special Agent James Grzeszczak of the United States

Department of Health and Human Services Office of Inspector General applied for, and

received, a search warrant for two premises:  (1) the business premises of HCP, located

at 6842 Park Avenue, Allen Park, Michigan 48101; and (2) the personal residence of an

HCP employee, Sakina Hakim, in West Bloomfield, Michigan.  The items to be seized

included medical files and other listed documents as well as electronic records and devices.

The same affidavit supported both search warrant requests.  (Def.'s Mot., Ex. 1, 9/19/12

Aff.)  The only search being challenged is that of Defendant's business premises.

The affidavit supporting the search of HCP provided the following.  The search was sought to seize evidence of health care fraud, in violation of 18 U.S.C. § 1347, and health care fraud conspiracy, in violation of 18 U.S.C. § 1349.  (*Id.*, ¶ 4.)  The Agent's investigation of Defendant revealed that Defendant led and directed a scheme in the Detroit Metro area through his ownership of HCP and involved his employing unlicensed physicians, physician assistants, and other unlicensed persons who purported to provide physician home visits that Defendant would bill to Medicare as if a licensed physician had rendered the services. (*Id.*, ¶¶ 5-6.)  In support of the application for a search warrant, the affidavit sets forth relevant information supporting probable cause.  This includes (1) complaints to Medicare about HCP and Defendant Hicham Elhorr; (2) interviews with former HCP employees; (3) interviews of HCP beneficiaries; and (4) HCP Medicare data analysis.  (*Id.*, ¶¶ 27-56.)

On September 20, 2012, the search warrant for Defendant Hicham Elhorr's business premises was issued and executed.

On February 28, 2013, a federal grand jury returned an indictment against Defendant Hicham Elhorr, M.D. charging him with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1); and with six counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2.  On November 27, 2013, a federal grand jury returned a First Superseding Indictment against Hicham Elhorr, M.D., Ali Elhorr, M.D., Lama Elhorr, and Kelly White charging all Defendants with one count of health care fraud conspiracy, in violation of 18 U.S.C. § 1349; Hicham Elhorr with ten counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2; Ali Elhorr with four counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2; and Lama Elhorr with two counts of health care fraud,

in violation of 18 U.S.C. §§ 1347 and 2.  (ECF No. 42.)

The charges stem from a multi-million dollar Medicare fraud scheme that Dr. Elhorr is alleged to have led and directed through his solely-owned home visiting physician practice called House Calls Physicians, PLLC ("HCP").  The Superseding Indictment alleges that Hicham Elhorr and his co-conspirators submitted false claims to Medicare for services not rendered and not medically necessary, including billings for physician home visits that licensed physicians did not provide.  Also, Hicham and Ali Elhorr signed documents certifying patients as homebound and referred them for millions of dollars worth of home health services – services that were subsequently billed to Medicare – when, in fact, neither Hicham nor Ali Elhorr had seen or diagnosed the patients.  It is further alleged that Hicham and Ali Elhorr improperly prescribed Medicare beneficiaries controlled substances and allowed others, including unlicensed individuals, to prescribe Medicare beneficiaries controlled substances under their names.

This criminal matter is now before the Court on Defendant Hicham Elhorr's motion seeking a *Franks* hearing and suppression of the evidence seized during the September 20, 2012 search of HCP's business premises.  Defendant's motion is based on his claim that the omission of three pieces of information from the search warrant affidavit was "intentional, deliberate, and reckless," and if included would have precluded the magistrate judge's finding of probable cause.  The government opposes Defendant's motion.

## II.   Analysis

In his motion, Defendant Hicham Elhorr argues that a *Franks* hearing is warranted based on his claims that three material omissions in the search warrant affidavit were made knowingly and intentionally, or with reckless disregard for the truth; and if included, would

-3-

preclude the magistrate judge's finding of probable cause.  The claimed omissions are as follows:  (1) the omission of Medicare beneficiary BM's statement to agents that his Medicare information was stolen while he lived in Michigan and before he moved to Florida in April 2008; (2) the omission of facts that Medicare beneficiary TR "is obviously elderly" and that she no longer drives to her dialysis appointments and uses a transportation service; and (3) the omission of the fact that, <u>after receiving a claim denial</u> for Medicare beneficiary VU because the services claimed were for visits that would have occurred <u>after</u> the Medicare beneficiary VU's death, Defendant's sister reported suspicion of identity theft as to this Medicare beneficiary.

The Court begins its analysis with the standard applied to requests for a *Franks* hearing.

### A.  *Franks* Standard

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may challenge the validity of a search warrant by alleging that the affidavit supporting the warrant contains false statements.  To make such a challenge, and to be entitled to an evidentiary hearing on the issue, the defendant must satisfy a two part test:

1. Defendant must make a substantial preliminary showing that the affidavit contained false statements and that the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; <u>and</u>

2. The court must find that the challenged statements were necessary to a finding of probable cause; i.e., exclusion of the allegedly false statements would render the affidavit insufficient to support probable cause.

*See Franks*, 438 U.S. at 155-56.  If the defendant fails to make the necessary "substantial preliminary showing" of deliberate falsehoods or reckless disregard for the truth, the presumption of validity with respect to the challenged affidavit is not overcome and a

*Franks* evidentiary hearing is not warranted.  *See Franks*, 438 U.S. at 171.  "The inquiry

does not continue if the court finds that the exclusion of the allegedly false statement does

not result in a lack of probable cause."  *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir.

1998).

### B.  Omissions Rather Than Affirmative False Statements

Defendant does not argue that the search warrant affidavit contained false statements.

Rather, he claims that it omitted the information described above.  As the Sixth Circuit

observed in *United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008):

> In the case of alleged material omissions – by analogy to the standard for
> *included* false statements – the defendant is entitled to a hearing if and only if:
> (1) the defendant makes a substantial preliminary showing that the affiant
> engaged in deliberate falsehood or reckless disregard for the truth in omitting
> information from the affidavit, and (2) a finding of probable cause would not be
> supported by the affidavit if the omitted material were considered to be a part of
> it.

*Id.* at 415.

In *Fowler*, the Sixth Circuit reiterated that "there is a higher bar for obtaining a *Franks*

hearing on the basis of an allegedly material omission as opposed to an allegedly false

affirmative statement."  *Id.* (citing cases).  This is so "because of the potential for endless

rounds of *Franks* hearings due to potentially endless conjecture about investigative leads,

fragments of information, or other matter that might, if included, have redounded to

defendant's benefit."  *Id.* (internal quotation marks and citation omitted).

### C.  Defendant Has Not Met the Requirements for a *Franks* Hearing

Defendant has not met the high standard for a *Franks* hearing recognized by the Sixth

Circuit in *Fowler*.  Even if Defendant satisfied the first requirement, he could not satisfy the

second "because the additional information would have had no impact on the finding of

probable cause." *Id.* at 416.

"[R]eviewing courts are to accord the magistrate's [probable cause] determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (internal quotation marks and citation omitted).   Considering the substantial, detailed information provided in the search warrant affidavit – the Medicare complaints, interviews with current and/or former HCP employees and Medicare beneficiaries, and data detailing HCP's Medicare billing for physician home visits – probable cause existed that evidence of health care fraud would be found at the business premises of HCP.   Inclusion of the omitted information that Defendant highlights does not change this fact.   Even if Medicare beneficiary BM did have his Medicare information stolen, there are substantial other facts in the affidavit showing that Defendant, through HCP, billed for services that were not provided.   That Defendant's sister contacted the Medicare claims processor to report possible identity theft regarding beneficiary VM *after* one of HCP's claims for services was denied does not alter the additional facts showing that HCP billed for services allegedly provided to eight other Medicare beneficiaries after the date of their deaths.   Finally, as to Medicare beneficiary TR, the facts that TR was elderly and did not always drive and received physical therapy, are irrelevant to her statements that, despite billings to the contrary, she has never received treatment from Defendant Hicham Elhorr or Ali Elhorr.

## III.   Conclusion

For the above-stated reasons, Defendant's motion for a *Franks* hearing and suppression [ECF No. 96] is DENIED.


s/Nancy G. Edmunds

Nancy G. Edmunds
United States District Judge

Dated:  November 3, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 3, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager