UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 HICHAM ELHORR, M.D., and
D-3 LAMA ELHORR,

    Defendants.
    _____/

Case No. 13-20158

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT HICHAM ELHORR'S MOTION *IN LIMINE* REGARDING *KOVALESKI* CONDUCT [95]**

At a hearing held on October 29, 2014, this criminal matter alleging charges involving health care fraud came before the Court on Defendant Hicham Elhorr's motion *in limine* regarding *Kovaleski* conduct [ECF No. 95], joined by Defendant Lama Elhorr [ECF No. 98]. For the reasons discussed below, Defendant's motion is DENIED.

**I.    Background**

On February 28, 2013, a federal grand jury returned an indictment against Defendant Hicham Elhorr, M.D. charging him with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1); and with six counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2. On November 27, 2013, a federal grand jury returned a First Superseding Indictment against Hicham Elhorr, M.D., Ali Elhorr, M.D., Lama Elhorr, and Kelly White charging all Defendants with one count of health care fraud conspiracy, in violation of 18 U.S.C. § 1349; Hicham Elhorr with ten counts of health care fraud, in

violation of 18 U.S.C. §§ 1347 and 2; Ali Elhorr with four counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2; and Lama Elhorr with two counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. (ECF No. 42.)

The charges stem from a multi-million dollar Medicare fraud scheme that Dr. Elhorr is alleged to have led and directed through his solely-owned home visiting physician practice called House Calls Physicians, PLLC ("HCP"). The Superseding Indictment alleges that Hicham Elhorr and his co-conspirators submitted false claims to Medicare for services not rendered and not medically necessary, including billings for physician home visits that licensed physicians did not provide. Also, Hicham and Ali Elhorr signed documents certifying patients as homebound and referred them for millions of dollars worth of home health services – services that were subsequently billed to Medicare – when, in fact, neither Hicham nor Ali Elhorr had seen or diagnosed the patients. It is further alleged that Hicham and Ali Elhorr improperly prescribed Medicare beneficiaries controlled substances and allowed others, including unlicensed individuals, to prescribe Medicare beneficiaries controlled substances under their names.

The matter is now before the Court on Defendant Hicham Elhorr's motion *in limine* regarding *Kovaleski* conduct.

**II.  Analysis**

The original Indictment in this case was returned by the grand jury on February 28, 2013 and charged only Dr. Hicham Elhorr. On November 27, 2013, a federal grand jury returned the First Superseding Indictment alleging charges against Dr. Hicham Elhorr as well as charges against Dr. Ali Elhorr, Lama Elhorr, and Kelly White.

On November 8, 2013, a grand jury subpoena was issued to Charter One Bank for

items and documents connected to the account of Hicham A. El-Horr M.D., P.C. The items and documents were to be returned by 8:30 a.m. on December 10, 2013.

On November 11, 2013, a grand jury subpoena was issued to Physician Billing Service Bureau, Inc. for copies of documents relating to Hicham Elhorr (including Hicham Elhorr M.D., PC a/k/a Dearborn Family Medicine Center) and House Calls Physicians. The requested copies were to be returned by 8:30 a.m. on December 12, 2013.

Defendant argues that, because the grand jury returned the First Superseding Indictment on November 27, 2013, before the subpoenaed documents from Charter One and Physician Billing Service Bureau, Inc. were required to be returned, the government must have abused the grand jury subpoena process for the purpose of preparing an already pending indictment for trial. For support, Defendant relies on a district court decision and a Sixth Circuit decision. *See United States v. Kovaleski*, 406 F. Supp. 267 (E.D. Mich. 1976) (Churchill, J.); *United States v. Doss*, 563 F.2d 265 (6th Cir. 1977).

In *Kovaleski*, the district court observed that while "[t]he pendency of a prosecution does not prevent the government from calling witnesses before a grand jury to investigate the possible commission of other offenses," it is improper to call "witnesses before a grand jury for the dominating purpose of gathering evidence for use in a pending case." *Id.* at 269 (citing cases). It then placed the burden on the prosecution "to persuade the Court that its 'dominating purpose' [was] proper," and concluded that the government did not meet its burden – it failed to convince the Court "that the 'dominating purpose' of calling the unindicted co-conspirator before a grand jury was not to obtain evidence for use at the upcoming trial, or at least to obtain an impeaching document if the witness was called by the defense." *Id.* at 270, 271. The *Kovaleski* court then crafted an appropriate remedy:

-3-

> Here, the subpoena has been served, and the witness has testified before the grand jury. At this point, the only effective remedy is to prohibit the government from profiting in any way from the calling of [the unindicted co-conspirator] before the grand jury. The government, therefore, may not call [the unindicted co-conspirator] as a witness at the upcoming trial. . . . If [the unindicted co-conspirator] is called as a defense witness, the government may not use the grand jury transcript of his testimony to impeach or to refresh memory. After reading the grand jury transcript, it does not appear to the Court that the government uncovered any new evidence; but if any such evidence was uncovered, the government should so inform the Court.

*Id.* at 271.

In *Doss*, the Sixth Circuit, sitting en banc, reaffirmed a panel's previous decision reversing two perjury convictions after it found that "the government deliberately and purposefully employed the grand jury in questioning an already indicted defendant about the crime for which he was soon to be tried." *Doss*, 563 F.2d at 271. The *Doss* court focused on the government's substantial purpose in calling an indicted defendant before the grand jury:

> Where a <u>substantial purpose</u> of calling an indicted defendant before a grand jury is to question him secretly and without counsel present without his being informed of the nature and cause of the accusation about a crime for which he stands already indicted the proceeding is an abuse of process which violates both the Sixth Amendment and the due process clause of the Fifth Amendment. Indictments for perjurious answers given in such a proceeding must be quashed because the proceeding itself is void.

*Id.* at 266 (emphasis added). The *Doss* court also clarified that "where a defendant is indicted for a particular crime, that fact does not prevent his being called before a grand jury to give evidence upon a wholly different and separable offense so long as he is not questioned about the offense for which he stands indicted." *Id.*

There is another published decision from this district that touches on this topic. *See United States v. Kirschner*, 823 F. Supp. 2d 665 (E.D. Mich. 2010) (Borman, J.). In

*Kirschner*, the defendant was indicted on three counts of receipt of child pornography. The defendant was indicted on December 10, 2009, but the AUSA had issued a "subpoena to Defendant Kirschner to testify before a Grand Jury on December 8, 2009" and required the defendant "to provide all passwords used or associated with the . . . computer . . . and any files." *Id.* at 666 (internal quotation marks omitted). The defendant moved to quash the subpoena, asserting his Fifth Amendment privilege against self-incrimination. *Id.* At the district court's request, the parties briefed the issue whether the government may properly use the grand jury, <u>post-indictment</u>, to acquire additional evidence in support of the prosecution. *Id.*

After considering the briefs and oral arguments, the *Kirschner* court "conclude[d] that the subpoena will not be quashed because, per government averment, it is being utilized post-indictment to investigate additional charges." *Id.* In reaching its conclusion, the court quoted a treatise on criminal procedure recognizing that, although "[t]he grand jury is given its broad investigative powers to determine whether a crime has been committed and an indictment should issue," those powers do not allow the grand jury "to gather evidence for use in cases in which indictments have already issued." *Id.* at 667 (quoting 3 LaFave, Israel, King, and Kerr, *Handbook on Criminal Procedure* 219, 221-222 (2d ed. 2007)).

> "[B]oth state and federal courts hold that it is an abuse of the grand jury process to use grand jury subpoenas <u>for the sole or dominating purpose</u> of preparing an already pending indictment for trial.
>
> \* \* \* \* \*
>
> Courts note that establishing a misuse claim is extremely difficult. Absent some indicative sequence of event demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper. Not surprisingly, reported cases finding an improper purpose are rare. Though a few cases suggest that the potential for abuse is

> heightened where the grand jury post-indictment seeks evidence bearing upon the pending charge from an indicted person himself, the government can often point to the potential for a superseding indictment involving further activity as a reason for seeking evidence from the indicted person.

*Id.* (internal quotation marks and citations omitted) (emphasis added).

Based on the government's averment that the requested testimony from the defendant, i.e., his computer password, would be used to investigate additional charges, as opposed to those on which the defendant was already indicted, the district court in *Kirschner* determined that the Sixth Circuit's decision in *Doss* did not require it to quash the subpoena. *Id.* at 667-68. That, however, did not end the court's inquiry. The defendant also argued that "requiring him to testify before the grand jury pursuant to subpoena issued by the government would violate his Fifth Amendment right against self-incrimination under the United States Constitution." *Id.* at 668. The district court agreed and quashed the subpoena requiring the defendant "to testify – giving up his password . . . ." *Id.* at 669.

Defendant's reliance on the decisions in *Kovaleski* and *Doss* is misplaced. Rather than provide support, examination of these decisions, as well as the prevailing precedent on this issue, illustrates the failings in Defendant's argument.

The Sixth Circuit has long held that "[s]o long a it is not the sole or dominant purpose of the grand jury to discover facts relating to [a] pending indictment, the Court may not interfere with a grand jury's investigation." *United States v. George*, 444 F.2d 310, 314 (6th Cir. 1971). Moreover, as observed by the Supreme Court, "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters., Inc.*, 498 U.S. 292, 300-01 (1991). Contrary to the district court's decision in *Kovaleski*, the Sixth Circuit holds that "[t]he defendant retains the

burden of demonstrating that an abuse [of the grand jury process] has occurred, as a 'presumption of regularity attaches to a grand jury's proceedings.'" *United States v. Breitkreutz*, 977 F.2d 214, 217 (6th Cir. 1992) (quoting *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976)).  And "unproven suspicions" and "mere speculation" are insufficient to satisfy the defendant's burden.  *Id.*  Finally, it is well-established that the government "may . . . continue to employ the grand jury process as part of an ongoing investigation, possibly leading to further charges against the subject of the former indictment."  *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993).

Here, Defendant merely speculates that the government subpoenaed the requested documents from third-parties for an improper purpose.  Other than observing that the First Superseding Indictment was returned before the subpoenaed documents were to be returned, Defendant offers only unproven suspicions that the government wanted the subpoenaed materials for the sole or dominant purpose discovering facts relating to the First Superseding Indictment.  The decisions Defendant relies upon for support are easily distinguished.  Here, the grand jury did not subpoena an indicted defendant or an unindicted co-conspirator to testify before the grand jury.

### III.  Conclusion

For the above stated reasons, Defendant's motion *in limine* regarding *Kovaleski* conduct is DENIED.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated:  November 3, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 3, 2014, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager